# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CHAD E. PARR

CASE NO. 2:20-CV-13173

     *Plaintiff*,

HON. MARK A. GOLDSMITH
DISTRICT JUDGE

*v.*

COMISSIONER OF SOCIAL
SECURITY,

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 13)

### I.    RECOMMENDATION

Plaintiff Chad Parr challenges the Commissioner of Social Security regarding a final decision denying his claim for Social Security Disability Insurance Benefits ("DIB"). The case was referred to the undersigned for review. (ECF No. 3; text only reassignment to the undersigned Magistrate Judge on June 25, 2021); *see* 28 U.S.C. § 636(b)(1)(B) (2012); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I recommend **DENYING** Plaintiff's motion for summary judgment, (ECF No. 10), **GRANTING** the Commissioner's motion, (ECF No. 13), and affirming the decision.

## II.    REPORT

### A.  Introduction and Procedural History

Plaintiff's application for DIB was protectively filed on April 11, 2019.  (ECF No. 8, at PageID.42, 90.)  He alleged that he became disabled on May 2, 2016.  (*Id*.)  The Commissioner denied the claim on August 7, 2019. (*Id.* at PageID.103–04.)  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred on February 21, 2020.  (*Id*. at PageID.42, 59, 122.)  The ALJ issued a decision on March 19, 2020, finding that Plaintiff was not disabled.  (*Id*. at PageID.39.)  The Appeals Council denied review on October 6, 2020.  (*Id.* at PageID.27.)  Plaintiff sought judicial review on December 3, 2020.  (ECF No. 1.)  The parties filed cross-motions for summary judgment and briefing is complete.  (ECF Nos. 10, 13.)

### B.  Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2012).  The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A) (2012). The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (2021); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2021).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2021)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 8, at PageID.44–51.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since "September 27, 20117, the alleged onset date." (*Id*. at PageID.44.)  At step two, the ALJ concluded that Plaintiff had the following severe impairments: history of left elbow fracture, history of left femur fracture, history of left elbow fracture, obesity, and chronic lumbar strain.  (*Id*.)  The ALJ found the following impairments to be non-severe: history of right ankle/heel fracture, diabetes, hypertension, sleep apnea, and kidney stones.  (*Id*.)   The ALJ also noted the following mental impairments as non-severe: depression and anxiety.  (*Id*. at PageID.45.)  None of these impairments met or medically equaled a listed impairment at step three.  (*Id.* at PageID.46.) Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except he is limited to a total of four hours of standing/walking in a workday and is unable to stand or walk more than one hour at a time. He can occasionally operate hand and foot controls. The claimant can occasionally push/pull with his legs and arms. He can occasionally perform overhead reaching to the non-dominant left and occasionally perform all other reaching to the left. The claimant can handle items frequently with the left hand. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, and crawl, but never crouch. He can never work at unprotected heights.

(*Id*.)  At step four, the ALJ found that Plaintiff could not perform his past relevant work as an independent truck operator.  (*Id.* at PageID.49.)  Finally, at step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy,

including, work as an "[o]ffice helper," a "router," and an "inspector – hand packager." (*Id.* at PageID.50.)  Accordingly, the ALJ concluded that Plaintiff was not disabled.  (*Id.*)

### E. Administrative Record

#### i.    Medical Evidence

Plaintiff, Chad Parr, was initially injured in 2002 when he fell out of a tree blind and fractured his left femur, left hip, right heel, right ankle, and left elbow.  (ECF No. 8, at PageID.343.)  After recovering from his injuries, Plaintiff returned to work as a lift truck operator.  (*Id.* at PageID.63.)  In 2015, Plaintiff broke his leg a second time when he fell out of his lift truck.  (*Id.* at PageID.64.)  From the time of his first injury up through the onset of his alleged disability, was severely obese and suffered from several diseases related to his obesity.  (*Id.* at PageID.62, 67, 71, 529–99, 733.)  Due to a combination of his obesity and his injuries, Plaintiff began to experience increasingly severe pain in his lower back.  (*See id.* at PageID.64–66.)  Plaintiff regularly consulted with his physicians regarding his obesity and back pain.  (*E.g.*, *id.* at PageID.529–99.)  However, Plaintiff's back pain eventually became so severe that he had to frequently call off work—a practice which ultimately led to his termination.  (*Id.* at PageID.65.)

Plaintiff's health was evaluated by three state consultants: an examining physician, a non-examining physician, and an examining psychologist.  (*See id.* at PageID.48.)  The examining state physician noted objective medical information and recorded Plaintiff's complaints, but did not opine on his health.  (*See id.* at PageID.729–34.)  Specifically, she noted that Plaintiff had "postoperative changes" to his left elbow, hip, and right heel.  (*Id.*

at PageID.730.)  Plaintiff had a decreased range of motion in his hip, lumbar spine, left elbow, and in both ankles.  (*Id.* at PageID.733.)  Additionally, Plaintiff had a negative FABER test and weighed 340 pounds.  (*Id.* at PageID.730–31.)

The non-examining state consultant, although lacking access to Plaintiff's entire medical record, opined that Plaintiff was not disabled.   (*Id.* at PageID.48, 103.) Notwithstanding his obesity and limited mobility, the state consultant determined that Plaintiff could work subject to some physical restrictions.  (*Id.* at PageID.100–02.)  He also evaluated Plaintiff's depression and anxiety diagnoses but suggested that these conditions were not severe.  (*Id.* at PageID.99, 102.)

Last, the state examining psychologist concluded that Plaintiff suffered from anxiety and depression, both of which "markedly impaired" Plaintiff's ability to "perform activities within a schedule, at a consistent pace," as wells as his abilities to "maintain regular attendance[] and complete a normal work day.  (*Id.* at PageID.739.)  She also concluded that his disorders "moderately impaired" his abilities to carry out instructions, interact with others, and "self-manage."  (*Id.* at PageID.739–40.)  During the examination, Plaintiff was "coherent[;] well-organized[;] and . . . fully oriented to person, place, and time."  (*Id.* at PageID.738.)  Moreover, he was cooperative and showed no deficiencies in "language functioning" or memory.  (*Id.* at PageID.738–39.)  He also mentioned that he "visits his parents once a day[,] . . . has a couple of friends," and "used to enjoy hunting and fishing." (*Id.* at PageID.738.)

### ii.     Plaintiff's Testimony at the Administrative Hearing

The ALJ began the hearing by allowing Plaintiff's counsel to make an opening statement. (*Id.* at PageID.61–62.)  Plaintiff's counsel stated that Plaintiff's impairments "arose from [his] fall out of [the] hunting blind. . . ." (*Id.* at PageID.62.)  He added that consequently, Plaintiff has "a lot of titanium in him" from his surgeries. (*Id.*)  Following his surgeries, Plaintiff returned to work until he was forced to leave his job due to pain stemming from his fall. (*Id.*)  Counsel added that Plaintiff's obesity "exacerbated" his pain and has caused a plethora of related health problems such as diabetes, sleep apnea, and hypertension. (*Id.*)  Counsel claimed that that Plaintiff had to spend a great deal of time "lying down with his legs over heart level to" manage his pain. (*Id.*)

After counsel's opening statement, the ALJ questioned Plaintiff. (*Id.* at PageID.63.) Plaintiff stated that he worked as a "fork truck driver" since the 1990's. (*Id.*)  Plaintiff shared that he fell from a tree stand in 2002 and sustained numerous fractures, but that he returned to work after he recovered. (*Id.*)  Over a decade later, Plaintiff broke his right leg, but returned to work again after recovering. (*Id.* at PageID.63–64.)

Plaintiff claimed that while he returned to work following both injuries, he eventually became unable to work because the pain from the injuries grew to be unbearable. (*Id.* at PageID.64–65.)  Plaintiff testified that he suffered from significant pain in his lower back and hip whenever he would "stand on [his] feet for a long period of time . . . ." (*Id.* at PageID.64.)  The pain became so severe that Plaintiff began to frequently call into work to request time off and was eventually let go for his absence. (*Id.* at PageID.65.)

The ALJ then allowed Plaintiff's counsel to examine him.  (*Id.* at PageID.66.) Counsel began by questioning Plaintiff about his weight.  (*Id.* at PageID.67.)  Plaintiff testified that he weighed three hundred and sixty pounds and stood at five feet and eight inches tall.  (*Id.*)  Plaintiff shared that he would periodically visit a physician who tried to help Plaintiff manage his weight.  (*Id.*)  Despite trying several different weight loss methods, Plaintiff never succeeded in losing weight.  (*Id.*)

Plaintiff's counsel then questioned him about his back pain.  (*Id.* at PageID.68.) Plaintiff testified that he occasionally received shots for his back pain at a clinic, but that the shots did little to help his pain.  (*Id.* at PageID.69.)  Plaintiff had more luck with a TENS unit,[1] which he would use whenever his back pain was particularly severe.  (*Id.* at PageID.69.)  He would also apply a pain cream to his back up to four times a day and regularly take methadone to treat his pain.  (*Id.* at PageID.73–74.)

Plaintiff shared that at times his back pain would be so bad that he would have to lay in his chair for an entire day.  (*Id.* at PageID.75.)  In fact, on an "average" day, Plaintiff would sit in his recliner for eight to twelve hours.  (*Id.* at PageID.77.)  Plaintiff would avoid standing for long periods of time and limited his household chores to tasks such as sorting socks and making cereal.  (*Id.* at PageID.75.)  Whenever he went places, Plaintiff would typically bring a single walking stick; however, Plaintiff did not take one with him to the

---

[1] TENS units are medical devices that "alleviat[e] pain by electrical stimulation of peripheral nerves through the skin."  Timothy P. Blanchard, *"Medical Necessity" Denials as a Medicare Part B Cost-Containment Strategy: Two Wrongs Don't Make It Right or Rational*, 34 St. Louis U. L. J., 939, 991 n.262 (1990).

hearing.  (*Id.* at PageID.81.)  Due to his back pain, he could not sleep for more than two

hours at a time each night without waking up.  (*Id.* at PageID.75.)

Plaintiff also testified that he had limited use of his arms.  Specifically, his left arm

was "[eighty] percent disabled" and could not fully bend or extend.  (*Id.* at PageID.78.)  He

stated that he could not use his "arms and hands for repetitive movement" over the span of

an eight-hour day and that he would "be too afraid" to attempt any "overhead reaching."

(*Id.* at PageID.79.)  He also stated that he could only lift "a few pounds" consistently.  (*Id.*)

At work, Plaintiff could freely use his left hand to operate his fork truck's hand controls,

and while he could effectively steer with his left hand, doing so would cause him

discomfort.  (*Id.* at PageID.81–82.)

### iii.   The Vocational Expert's Testimony at the Administrative Hearing

After Plaintiff's counsel finished his examination, the ALJ then questioned the

vocational expert ("VE").  (*Id.* at PageID.82.)  The VE first testified that Plaintiff's former

job as a fork truck operator was classified as a "medium work" job in the Dictionary of

Occupational Titles ("DOT") and that it was considered "semi-skilled" work.  (*Id.* at

PageID.83.)

The ALJ then asked the VE whether an individual with Plaintiff's same age,

education, and experience could perform "light work" as defined by the DOT, except that

he or she would be limited to standing or walking for no more than four hour per day and

no more than one hour at a time, and that he or she would be limited to occasional operation

of foot and hand controls, and occasional "push/pull."  (*Id.*)  Further, the hypothetical

individual would be "limited to occasional reaching with the left non-dominant arm" and "frequent handling with the left non-dominant arm." (*Id.*)  The hypothetical also included various other restrictions on the individual's movement.  (*Id.* at PageID.83–84.)

The VE testified that, based on her knowledge, Plaintiff could work as: an office helper, DOT code 239.567-010, light work, approximately 120,000 jobs; a router, DOT code 222.587-038, light work, approximately 150,000 jobs; and an "inspector and hand packager," DOT code 559.687-074, light work, approximately 100,000 jobs.  (*Id.* at PageID.85.)  The VE clarified that, while the DOT did not identify functions "such as reaching and handling by right or left dominant or non-dominant," as was required by the ALJ's hypothetical, she nonetheless accounted for these restrictions when answering the hypothetical.  (*Id.* at PageID.84–85.)

The ALJ then asked the VE whether any jobs would be available under two different hypotheticals.  First, he asked whether any jobs would be available for someone with the same restrictions but who could only perform "light work."  (*Id.* at PageID.85.)  The VE testified that several different jobs existed that someone with these limitations could perform.  (*Id.* at PageID.86.)  Second, the ALJ asked whether someone with the same limitations as the second hypothetical, but who also needed the ability to alternate between standing and sitting in twenty-minute intervals would be able to find any work in the national economy.  (*Id.*)  The VE stated that such a restriction would prevent someone from "maintain[ing] competitive employment."  (*Id.* at PageID.86–87.)

## F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B) (2012).  The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources and nonmedical sources. An acceptable medical source means a medical source who is a:

(1)    Licensed physician (medical or osteopathic doctor);

(2)    Licensed Psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)   A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3)    Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4)    Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5)    Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6)     Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7)     Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8)     Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. § 404.1502(a) (2021).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." *Id.* § 404.1502(d).

In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id.* § 404.1502(e). "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.* § 404.1520c(a). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

Of these factors, the first is "supportability." This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the claim. This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id.* § 404.1520c(c)(3). This factor will include the analysis of:

(i)  Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(ii)  Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(iii)  Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

14

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s);

(v)    Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder[.]

*Id.* The fourth factor of the SSA's analysis is "specialization." In making this determination, the SSA will consider "[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." *Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation

requirements."   The ALJ will consider "source-level articulation."   Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record."   *Id.* § 404.1520c(b)(1).

"Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."   *Id.*   The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually."   *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be."   *Id.* § 404.1520c(b)(2).   As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.   We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we

articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported" and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3).

The regulations clarify that the SSA is "not required to articulate how we considered evidence from non-medical sources using the requirements of paragraphs (a) through (c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities;" "[d]isability examiner findings," meaning, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled;" and "[s]tatements on issues reserved to the Commissioner[;]" these statements include:

    (i)      Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;

    (ii)    Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments[];

(iii)     Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

(iv)     Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

(v)      Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

(vi)     Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id.* § 404.1520b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules." *Id.* § 404.1504. Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id.* The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id.* Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood,

thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 404.1502(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id.* § 404.1529(a).

But the SSA clarified, "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as

consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id.* § 404.1529(a).

Further, "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id.* § 404.1529(a). The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id.*

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . We will

consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]"  *Id.*  The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

> (i)     [D]aily activities;
>
> (ii)    The location, duration, frequency, and intensity of . . . pain;
>
> (iii)   Precipitating and aggravating factors;
>
> (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
>
> (v)     Treatment, other than medication, . . . received for relief of . . . pain;
>
> (vi)    Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."  *Id.* § 404.1530(a).  Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."  *Id.* § 404.1530(b).  Acceptable (or "good") reasons for failure to follow prescribed treatment include:

> (1)     The specific medical treatment is contrary to the established teaching and tenets of your religion;
>
> (2)     The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)     Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)     The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)     The treatment involves amputation of an extremity, or major part of an extremity.

*Id.* § 404.1530(c).

### G. Arguments and Analysis

#### i.  Listing 1.02A

Plaintiff first argues that the ALJ did not rely on substantial evidence in finding that Plaintiff did not meet listing 1.02A.  A claimant is considered disabled at step three only if he or she meets every element of a listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 1.02A, the listing for "major dysfunction[s] of one or more joints," provides that a claimant will be considered disabled if he or she has a

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With . . . [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A (2018).  Every element must be met concurrently for a one-year period.  *Id.* § 404.1525(c)(3)–(4) (2021).

A claimant is unable to "ambulate effectively" if he or she has "an extreme limitation of the ability to walk."  *Id.* pt. 404, subpt. P, app. 1, §§ 1.00B2b(1), 1.02A. Further, a claimant cannot ambulate effectively if the claimant requires the use of a hand-

held device, that requires the use of two hands, to ambulate independently. *Id.* pt. 404, subpt. P, app. 1, § 1.00B2b(1). Thus, a claimant who can walk independently with the use of a single cane is not disabled under this listing, whereas a claimant who requires the use of a two-handed walker may be disabled. *Id.* The regulations further provide that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" and must "have the ability to travel without companion assistance to and from a place of employment . . . ." *Id.* pt. 404, subpt. P, app. 1, § 1.00B2b(2)

Here, the ALJ relied on substantial evidence in finding that Plaintiff did not meet listing 1.02A. The record contains substantial evidence that Plaintiff could ambulate effectively. Several of Plaintiff's physicians noted that Plaintiff could walk normally without using any assistive device—let alone a device that requires the use of both hands. (*E.g.*, ECF No. 8, at PageID.507, 541, 544, 547, 550, 556, 559, 572, 578, 588, 597, 599, 635, 638. 641, 645, 650, 653, 656, 659, 660, 662, 666, 665, 669, 672, 675, 678, 681, 776, 785, 789, 794, 797, 801, 806.) Moreover, Plaintiff could independently complete daily activities. *Miller v. Comm'r of Soc. Sec.*, No. 17-11665, 2018 WL 6566575, at \*5 (E.D. Mich. Mar. 19, 2018) (citing 20 C.F.R. § Pt. 404, Subpt. P, app. 1, § 1.00B2b(1)) ("[T]he ability to independently complete daily activities is consistent with effective ambulation."). Plaintiff reported that he could walk up to eighty yards without having to stop and that he would hunt and fish "a few times a season." (ECF No. 8, at PageID.238, 240.) Plaintiff also stated that he could do some household chores, that he would go shopping once each

week, and that he would visit his parents every day.  (*Id.* at PageID.236–37, 239, 738.)  The examining consulting physician noted that Plaintiff could generally walk normally, and the ALJ noted that Plaintiff could climb stairs normally without the use of a handrail.  (*Id.* at PageID.48, 730–31.)  These facts provide substantial evidence that Plaintiff could ambulate effectively.

In rebuttal, Plaintiff presents evidence that tends to show that he could not ambulate effectively.  Specifically, Plaintiff states that he uses "*a* walking stick to get around," that he uses a seated electric cart when shopping, and that his errands and household chores are both infrequent and physically undemanding. (ECF No. 14, at PageID.868–69 (emphasis added)); 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1) (instructing that a claimant cannot ambulate effectively if he or she cannot ambulate without using a device that requires the use of *two* hands).  However, where substantial evidence supports the ALJ's decision, as it does here, this Court cannot remand the ALJ's decision just because substantial evidence may support a different conclusion.  *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 440 (6th Cir. 2017).

Plaintiff also presents evidence to support some of the remaining elements in listing 1.02A.  First, because Plaintiff must meet *every* element in the listing, Plaintiff's ability to ambulate effectively precludes him from meeting listing 1.02A even if he meets every other element of the listing.  *See Sullivan*, 493 U.S. at 530.  Moreover, the record contains substantial evidence that at least two of the remaining elements have not been met.  First, the record contains no evidence of any "joint space narrowing, bony destruction, or

ankylosis." Plaintiff argues that a CT scan showing a hairline fracture on his right ankle meets this requirement, but this injury plainly does not constitute "joint space narrowing" or "anklyosis," and even if a fracture could constitute "bony destruction," there is no substantial showing that this fracture did not heal within twelve months of Plaintiff's injury. 20 C.F.R. § 404.1525(c)(3)–(4); (ECF No. 10, at PageID.825; *see* ECF No. 8, at PageID.356). Additionally, several examinations of Plaintiff showed a normal range of motion in the right ankle.[2] (*Id.* at PageID.638, 650, 732, 794.) For these reasons, I suggest that substantial evidence supports the ALJ's finding that Plaintiff did not meet listing 1.02A.

### ii. Whether the ALJ Properly Gave Partial Weight to the Non-Examining Consultative Physician's Opinion

Plaintiff argues that the ALJ erred at steps three through five by over-crediting the opinion of the non-examining consulting physician, Dr. Green, because Dr. Green did not have access to the entire record when he rendered his opinion.[3] Generally, an ALJ is not

---

[2] Plaintiff also argues that the record lacked substantial evidence to support a finding that he did not have a "gross anatomical deformity" with "chronic joint pain." (ECF No. 8, at PageID.825–26.) The Commissioner did not contest these arguments in his motion, and the ALJ did not specify which elements of listing 1.02A he relied on in finding that Plaintiff did not meet the listing requirements. (*Id.* at PageID.44–50; ECF No. 13.) However, this Court need not address these uncontested issues because Plaintiff has failed to show that the ALJ's decision with respect to the remaining elements was not supported by substantial evidence.

[3] While Plaintiff's argument concerns the degree of weight given to the non-examining physician, he labels it as a "medical equivalence" argument and spends two pages of his brief stating the rules for how medical equivalence is found. (ECF No. 10, at PageID.825, 827–30.) However, he makes no argument, apart from a conclusory statement, that the ALJ did not rely on substantial evidence in finding that Plaintiff's impairment(s) did not medically equal listing 1.02A. (*Id.* at PageID.827–30.) Specifically, Plaintiff states in his heading that his "impairments meet or equal" listing 1.02A, but his analysis instead focuses on other, distinct issues. (*Id.* at PageID.825, 827–30.) Accordingly, I consider this argument waived and limit my analysis to the weight given to Dr. Green's opinion. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010).

bound by the opinion of a non-examining consulting physician; rather, the ALJ must "evaluate the persuasiveness" of the medical opinion and decide how much weight to afford it.  20 C.F.R. § 404.1520c(a) (2021); *Stanley v. Comm'r of Soc. Sec.*, Case No. 20-11678, 2021 WL 3021265, at *6 (E.D. Mich. July 16, 2021).  This evaluation should consider, among other factors, (1) the degree to which the consultant's opinion is supported by objective medical evidence and supporting explanations and (2) the degree to which the opinion is consistent with the evidence from other medical sources.    20 C.F.R. § 404.1520c(a), (c)(1)–(2).

Further, while the old regulations provide that an ALJ must generally assign more weight to a physician who has examined the claimant than to a non-examining consultant, unless "[t]he non-examining source's opinion 'is based on a review of a complete case record,'" the regulations now provide that a physician's opportunity to physically examine a claimant is simply a factor an ALJ should consider when evaluating the credibility of a consulting physician.  *Compare Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (quoting Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996)) *and* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(c)(3)(v).    However, the new regulations still recognize that an examining physician "*may* have a better understanding of [a claimant's] impairment" than a non-examining physician.  20 C.F.R. § 404.1520c(c)(3)(v) (emphasis added).

Plaintiff relies on *Miller v. Comm'r of Soc. Sec.* to argue that because the non-examining physician lacked access to the entire record, the ALJ should not have afforded him even partial weight.  811 F.3d at 834.  The Sixth Circuit in *Miller* held that an ALJ

erred by affording "significant weight" to a non-examining physician who lacked access to the entire record without providing "some indication that the ALJ at least considered" the missing facts "before giving greater weight" to the physician's opinion. *Id.*; *Sloan v. Comm'r of Soc. Sec.*, Case No. 17-11150, 2019 WL 458163, at *2–3 (E.D. Mich. Feb. 6, 2019). The Court found that the ALJ granted the most weight to the non-examining consultant even though the non-examining consultant lacked access to the entire record. *Miller*, 811 F.3d at 834. Relying on the old regulations, the Court reasoned that because the ALJ "gave no indication" that he considered the unavailable facts, the ALJ erred by affording "significant" weight to the non-examining physician. *Id.*

First, even under the old regulations, *Miller* is not instructive. To be clear, the issue in *Miller* was not simply that the ALJ afforded too much weight to the non-examining consultant's opinion given his limited knowledge of the record—it was that the non-examining physician's opinion was afforded *more* weight than the examining consultant's opinion, without an adequate justification. *See id.* Here, the examining consultant never opined on Plaintiff's medical conditions—she merely relayed rote, objective medical findings. (ECF No. 8, at PageID.48); *see* 20 C.F.R. § 404.1527 ("Medical opinions are statements . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s)."). Moreover, the ALJ did not give additional weight to the non-examining consultant's opinion; rather, he discounted its weight. (ECF No. 8, at PageID.48.) The ALJ could not have violated the old regulations because he never gave more weight to the *opinion* of a non-examining consultant than to the *opinion* of an examining consultant. (*Id.*); *see Miller*, 811 F.3d at 834.

Moreover, Plaintiff's argument is based on regulations that have been rescinded. Under the new regulations, the ALJ is not required to give primary weight to an examining consultant's opinion; rather, the ALJ must simply consider an opining physician's opportunity to examine the claimant as one of several factors in assessing the physician's reliability.  20 C.F.R. § 404.1520c.

Here, the ALJ properly considered these factors when deciding how much weight to give to the non-examining consulting physician's opinion.  Indeed, the ALJ expressly considered the examiner's limited access to information and *discounted* the weight of his opinion accordingly.  (ECF No. 8, at PageID.48.)  Accordingly, I suggest that the ALJ properly complied with the requirements in 20 C.F.R. § 404.1520c(c) and relied on substantial evidence in discounting the non-examining physician's opinion.[4]

Additionally, insofar as Plaintiff argues that the ALJ's reliance on the non-examining consultant's opinion resulted in an error in the ALJ's medical equivalence determination, an ALJ need only support a finding that a claimant's impairments *are* medically equivalent to a listing with state agency medical consultant findings.  Social Security Ruling 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).  Where an ALJ does not

---

[4] Plaintiff also points to the *Miller* Court's recognition that the ALJ's decision to find an RFC that was consistent with an expert she afforded "limited weight . . . did not comport" with the ALJ's decision to grant "significant weight" to an expert whose more restrictive RFC the ALJ did not adopt.  (ECF No. at PageID.829.)  Plaintiff argues that similarly, here, the ALJ's decision to afford "significant weight" to the non-examining physician did not comport with his decision to find a more restrictive RFC.  (*Id.*)  However, I find that the ALJ's decision is completely consistent—unlike the ALJ in *Miller* who declined to adopt a finding from a physician who he afforded "significant weight," the ALJ here discounted the weight of the non-examining consultant due to his limited access to information and, after considering the information that the non-examining physician lacked access to, decided to afford a *more* restrictive RFC.  (ECF No. 8, at PageID.48.); *see Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing.").

find medical equivalence, the ALJ need not support his or her finding with a medical consultant's findings. *Id.* Because the ALJ here did not find that Plaintiff's impairments were medically equivalent to a listing, he was not required to support his finding with the opinion of a consulting physician and could not have erred by affording too much weight to any opinion. *Cf. Jammer v. Comm'r of Soc. Sec.*, Civil Action No. 18-10445, 2019 WL 1372171, at *7 (E.D. Mich. Feb. 22, 2019) ("[A]n ALJ may find that a claimant does not medically equal a listed impairment without the support of a medical opinion.").

### iii. Obesity

Next, Plaintiff argues that the ALJ erred at steps two through five because he failed to sufficiently articulate the extent to which he considered the Plaintiff's obesity. According to Plaintiff, the ALJ's "limited discussion" prevents this Court from determining to what extent the ALJ considered Plaintiff's obesity, both on its own and "in combination with other impairments." (ECF No. at PageID.829.) Specifically, Plaintiff argues that the ALJ should have mentioned various comorbidities related to Plaintiff's obesity such as his diabetes, fatigue, high blood pressure, and sleep apnea, at least when discussing Plaintiff's RFC. (*Id.* at PageID.833–35.)

Social Security Ruling 19-2p, 2019 WL 2374244, (May 20, 2019) recognizes that a claimant's obesity, when considered in combination with a claimant's other impairments, may increase "the severity or functional limitations of the other impairments"; however, SSR 19-2p "does not mandate a particular mode of analysis." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006). Thus, to adequately consider a claimant's obesity, an ALJ need only "[credit] 'RFCs from physicians who explicitly accounted for [the

claimant's] obesity.'"  *Miller*, 811 F.3d at 834–35 (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010)).[5]

Here, the ALJ first found that Plaintiff's obesity was a severe medically determinable impairment.  (ECF No. 8, at PageID.44, 48.)  At step three, the ALJ explicitly stated that he considered Plaintiff's obesity, "[b]ased on the information in the case record," and found that it did not "increase the severity of coexisting . . . impairments," nor did it "in combination with other impairments," medically equal any listing.  (*Id.* at PageID.46.)  Further, when finding Plaintiff's RFC, the ALJ cited the non-examining medical consultant's opinion on Plaintiff's RFC, which "explicitly accounted for" Plaintiff's obesity.  (*Id.* at PageID.48, 97, 100); *cf. Coldiron*, 391 F. App'x at 443 (finding that an ALJ adequately considered a claimant's obesity by discussing it in his findings of fact and using RFCs from physicians who "explicitly considered" obesity).  Moreover, at this step, the ALJ again explicitly discussed the effect of Plaintiff's obesity in conjunction with his other impairments.  (ECF No. 8, at PageID.48.)  Indeed, the ALJ acknowledged Plaintiff's BMI of "50.5" and discussed its effects on Plaintiff's "exertional functions" and "non[-]exertional functions," its "stress on [Plaintiff's] weight-bearing joints," and Plaintiff's limited "range of motion, ability to manipulate objects, ability to tolerate environmental conditions, and physical and mental ability to sustain function over time . . . in combination

---

[5] Although *Bledsoe*, *Miller*, and *Coldiron* apply Social Security Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002), which was rescinded and replaced by SSR 19-2p, this Court has recognized that both "rulings are fundamentally identical when it comes to considering obesity as a factor."  *Dilworth v. Saul*, Case No. 19-cv-12134, 2021 WL 869654, at *3 n.2 (E.D. Mich. Mar. 9, 2021); *see also Chris Smith v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-1366, 2021 WL 3566695, at *11 n.7 (N.D. Ohio May 28, 2021).

with the other impairments." (*Id.*)  Accordingly, the ALJ adequately considered Plaintiff's obesity in combination with his other impairments.

Further, insofar as Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because it failed to adequately consider some of the effects of Plaintiff's obesity, I suggest that this argument fails.  The ALJ incorporated the findings of both physical consulting physicians and considered their opinions in conjunction with the medical evidence when considering the effects of Plaintiff's obesity.  (*Id.* at PageID.47–48.)  Plaintiff cannot show that the ALJ's decision was inadequately supported by merely pointing to substantial evidence that may support a different finding—this Court will not reweigh the evidence.  *Shepard*, 705 F. App'x at 440.

### iv.  Residual Functioning Capacity

#### 1.  Whether the ALJ's RFC Finding is Deficient for Not Permitting a Full Range of Light Exertion Work

Plaintiff argues that the ALJ erred by finding that Plaintiff could perform "light work" even though Plaintiff's impairments prevent him from performing "light work" as it is defined by the regulations.  At steps four and five, the ALJ must consider a claimant's RFC.   20 C.F.R. § 404.1520 (2021).   The RFC is the claimant's ability to work notwithstanding his or her impairments.  *Id.* § 404.1545.  The regulations provide defined "exertional categories" that describe a claimant's physical abilities.  *Id.* § 404.1567.

At step four, an ALJ need not, but "*may*" express RFC in terms of an exertional category.  Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996) (emphasis added).  At step five "RFC must be expressed in terms of, o*r related to*, the exertional

categories." *Id.* (emphasis added).  Thus, an ALJ is not required to find that a claimant can perform a full range of work at a given exertional level.  *See id.*; *see e.g.*, *Cole v. Comm'r od Soc. Sec.*, No. 2:13-cv-250 2014 WL 3809794, at *2 (S.D. Ohio Aug. 1, 2014) (finding that a claimant could perform sedentary work with additional limitations).  The regulations simply describe what work can be performed in a defined category; they do not mandate that the ALJ find that a claimant can perform a full range of work in a given category.  *See* SSR 96-8p.

Here, Plaintiff asserts that his impairments prohibit light work; however, the ALJ never found that Plaintiff could perform light work.  (ECF No. 8, at PageID.46.)  The ALJ found that Plaintiff could perform light work "except" that he was limited to four hours of standing or walking per day and had several other physical limitations on his ability to work.  (*Id.*)  Thus, because the ALJ did not, and was not required to, find that Plaintiff could perform a full range of light work, Plaintiff's inability to perform a full range of light work is irrelevant.  The ALJ considered Plaintiff's unique limitations and found an RFC that was *more* restrictive than light work.[6]

In a related argument, Plaintiff asserts that he should be precluded from performing "light work" because the ALJ assessed a "sit/stand option."  Plaintiff incorrectly relies on

---

[6] Plaintiff cites to Social Security Ruling 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983) to define light work as that which "involves being on you [sic] feet [six] of [eight] hours and having good use of both hands." (ECF No. 10, at PageID.832.)  Plaintiff argues that because the ALJ determined that he could only stand for four hours per day, he cannot perform light work.  (*Id.*)  First, as discussed, the ALJ did not find that Plaintiff could perform a full range of light work.  Second, even if the ALJ found that Parr could perform light work, SSR 83-10 only applies when the ALJ relies exclusively on the Medical-Vocational Rules to determine whether a claimant can perform other work, not where, as was the case here, the ALJ relied on a vocational expert's ("VE's") testimony.  SSR 83-10, at *1; (ECF No. 8, at PageID.50.)

*Wages v. Sec. of Health & Human Servs.*, 755 F.2d 495 (6th Cir. 1985) for the proposition that a claimant who must freely alternate between sitting and standing is automatically precluded from performing sedentary work. Plaintiff argues that this holding should extend to light work.

However, Plaintiff misstates the Sixth Circuit's holding in *Wages*. In *Wages*, the ALJ relied on the medical-vocational guidelines to find that the claimant could perform sedentary work even though the claimant had to periodically alternate between sitting and standing. *Id.* at 497–99. However, the Sixth Circuit noted that although "sedentary" jobs allow a claimant to sit for at least six hours per day, they generally do not allow a claimant to freely alternate between sitting and standing. *Id.* at 498. Thus, because the claimant required a "sit/stand option," and sedentary jobs generally require workers to remain in a fixed position, the ALJ did not rely on substantial evidence when finding that the claimant could perform sedentary work. *Id.* at 499.

The Sixth Circuit has since clarified that *Wages* does not apply when an ALJ relies on a VE's testimony instead of the guidelines. *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1277 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1002 (6th Cir. 1988); *see also Arnold v. Comm'r of Soc. Sec.*, Civil Action No. 15-14068, 2016 WL 8376403, at *14 (E.D. Mich. Dec. 6, 2016). And for good reason. A VE can testify as to whether sedentary jobs exist for a claimant with a "sit/stand option"— an insight that the guidelines cannot offer. *See McCormick*, 861 F.2d at 1002.

Consequently, *Wages* does not apply to the present case. First, the ALJ never found that Plaintiff had to freely alternate between sitting and standing; he found that Plaintiff

could not stand for more than one hour at a time for four hours total each day. (ECF No. 8, at PageID.46.) Under the ALJ's findings, Plaintiff could conceivably sit for an entire day without ever needing to alternate his position. Further, the ALJ did not find that Plaintiff could perform light work—he found that he could perform light work with several limitations. (*Id.*) Given these limitations, the VE testified that there were 370,000 jobs in the U.S. that Plaintiff could perform. (*Id.* at PageID.85.) Thus, because the ALJ relied on the VE's testimony, his finding would have been proper even if he had found that Plaintiff could perform light work with a "sit/stand option." *McCormick*, 861 F.2d at 1002.

### 2. Whether the ALJ Properly Relied on Jobs Identified by the VE that Conflicted with the Dictionary of Occupational Titles.

Plaintiff next argues that the ALJ erred by relying on the jobs identified by the VE because the Dictionary of Occupational Titles ("DOT") description of each job conflicted with the VE's testimony. Generally, "[o]ccupational evidence provided by a VE . . . should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . ." *Id.*; *see also Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017); *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435 (6th Cir. 2016).

Here, there is a conflict between the VE's testimony and the DOT descriptions of the jobs proposed by the VE. While the VE's jobs were identified for a hypothetical person who was "limited to occasional reaching with the left non-dominant arm," the DOT's

descriptions of each job stated that they require "frequent handling, fingering, and reaching."  (ECF No. 8, at PageID.83–85; ECF No. 10, at PageID.832); *Dictionary of Occupational Titles* 222.587-038, 239.567-010, 559.687-074 (4th ed. 1991).  However, this conflict was resolved by the VE who explained that "the [DOT] had not been significantly updated in over [thirty] years."  (ECF No. 8, at PageID.84–85.)  The DOT did not define reaching or handling "by right or left dominant or non-dominant," so the VE qualified her testimony by stating that any information she gave was "based on [her] knowledge" that the jobs she mentioned involved "occasional reaching with the upper left extremity."  (*Id.*)  Thus, because the VE resolved the conflict with the DOT, the ALJ could properly rely on her testimony.  *Cf. Joyce*, 662 F. App'x at 435–36 (holding that the ALJ "procedurally erred" by not resolving a conflict between the DOT and the VE's testimony).

### 3.  Whether the ALJ's RFC Finding Included Sufficient Limitations

Next, Plaintiff argues that the ALJ's RFC determination is "too robust" and that the ALJ should have included more limitations to reflect Plaintiff's "pain and fatigue."  (ECF No. 10, at PageID.832.)  However, Plaintiff does not state exactly what limitations the ALJ ought to have included in his RFC finding, and it is not this "Court's function to search the administrative record for evidence to support [Plaintiff's] argument."  (*Id.*); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (internal quotation marks omitted); *Berry v. Comm'r of Soc. Sec.*, No. 16-10548, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) (holding that a plaintiff waived his argument that "the ALJ could have included more restrictive limitations in his RFC

assessment" by not specifying what "restrictions might be appropriate").   Therefore, I suggest that Plaintiff's argument that the ALJ's RFC finding was under restrictive is waived.

Similarly, Plaintiff's bare assertion that his fatigue and chronic pain syndrome "should have been . . . severe impairment[s]" that "disabled him" is underdeveloped and therefore should be waived.  *Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 917 n.1 (6th Cir. 2021) (citing  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited].")); (ECF No. 10, at PageID.832.)[7]  Moreover, the ALJ expressly found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects" of his pain and fatigue was "not entirely consistent with the medical evidence" in the record.  (ECF No. 8, at PageID.47.)   For example, in 2018, Plaintiff "reported that he was feeling well [and] without fatigue."  (*Id.*)  The ALJ also noted that while Plaintiff claimed to have back pain, he "had not participated in physical therapy or had injections since 2016."  (*Id.*)  One of Plaintiff's treating physicians also noted that Plaintiff "had no diagnosis that would qualify him for disability."  (*Id.*)  Thus, I suggest that even if Plaintiff had not waived this argument, substantial evidence supports the ALJ's decision that Plaintiff's pain and fatigue were not severe impairments that disabled him.

---

[7] Plaintiff also states that his allegations that he experience disabling pain and fatigue should be "enhance[d]" because of his long work history; however, "this [C]ircuit does not follow the Second Circuit's procedure of automatically according a Social Security claimant 'enhanced' or 'substantial' credibility based upon [his or] her long-standing work history."  *Jones v. Comm'r of Soc. Sec.*, No. 4:14-CV-14417, 2016 WL 759439, at *2 (E.D. Mich. Feb. 26, 2016).

### 4. Whether the ALJ Properly Discounted the Examining Consultative Psychologist's Opinion.

Next, Plaintiff argues that the ALJ erred by "conveniently" finding that medical evidence contradicted the examining consultative psychologist's opinion that Plaintiff's ability to "complete a normal work day" was markedly impaired.  (ECF No. 10, at PageID.832–33.)   An ALJ is not bound by the opinion of an examining consultative physician or psychologist. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding.").  Rather, the ALJ must decide how much weight to afford the physician's opinion given the extent to which the physician's opinion is consistent with, and supported by, medical evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-28 (6th Cir. Sept. 5, 2013) (stating that an ALJ is not "bound" by medical opinions, but must instead base his or her RFC determination on all of the evidence in the record); 20 C.F.R. § 404.1520c.

Further, because "an ALJ is charged with the duty of observing a witness's demeanor and credibility" the ALJ's credibility findings "are to be accorded great weight and deference" and "may not be disturbed absent a compelling reason." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quotation marks omitted); *Walters v. Comm'r of Soc. Sec.*, 721 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ found that the psychologist's opinion that plaintiff's ability to work would be "markedly impaired due to" his "anxiety and depression" was inconsistent not just with the "medical evidence of record," but with her own examination.  (ECF No. 8, at

37

PageID.48.)  For example, the consulting psychologist's opinion was inconsistent with Dr. Schirado's opinion that Plaintiff's depression and anxiety imposed only "mild" limitations. (*Id.* at PageID.98.)  She also contradicted statements by Plaintiff's own physician who noted that on at least two separate occasions, Plaintiff was not anxious or depressed.  (*Id.* at PageID.559, 597.)  Moreover, her opinion contradicted her own finding that Plaintiff was "coherent" and "well organized."  (*Id.* at PageID.738.)  For these reasons, I suggest that the ALJ's decision to discount the opinion of the state consulting psychologist was supported by substantial evidence.  *Cf. Newbert v. Comm'r of Soc. Sec.*, Case No. 20-11696, 2021 WL 2349304, at *10 (E.D. Mich. Mar. 3, 2021) (finding that an ALJ did not err by discounting a state consultative examiner whose opinion contradicted his own findings and other medical evidence in the record).

### 5.  Whether Substantial Evidence Supports the ALJ's Residual Functioning Capacity Finding.

Last, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because he selectively relied only on certain portions of the record that supported his finding.  Specifically, Plaintiff argues that the ALJ failed to adequately consider Plaintiff's limited ability to walk, stand, or reach with his left arm.  As a result, the ALJ found an RFC that was under-restrictive.

Arguments, like Plaintiff's, that an ALJ "cherry picked" evidence are seldom successful because "the same process can be described more neutrally as weighing the evidence."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).  Crediting an argument that the ALJ "cherry picked" evidence would necessarily require the District

Court to reweigh the evidence. *Ritchie*, 540 F. App'x at 531. Thus, this Court will not reverse an ALJ's decision just because substantial evidence may have supported another finding; instead, this Court's review is limited to whether the ALJ's decision was supported by substantial evidence. *Shepard*, 705 F. App'x at 440.

Plaintiff attempts to analogize this case to *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002). In *Howard*, the Sixth Circuit held that an ALJ erred by dismissing treatment notes that contained "a substantial portion" of the claimant's medical history. *Id.* at 241–42. Although the notes contained several of the claimant's complaints along with the doctor's impressions, the ALJ dismissed them entirely because they were illegible, "handwritten gobblegook." *Id.* at 241. The Sixth Circuit disagreed that the notes were completely illegible and reasoned that because the ALJ completely disregarded a "significant portion" of the record, his decision was not supported by substantial evidence. *Id.* at 242.

However, unlike in *Howard*, the ALJ here did not completely disregard a "significant portion" of the record. The ALJ acknowledged that Plaintiff complained of back pain and difficulty using his left arm, but found that Plaintiff's complaints, although somewhat probative, were inconsistent with other evidence in the record. (ECF No. 8, at PageID.47–48.)

Indeed, unlike *Howard*, the ALJ's RFC finding in the present case was supported by substantial evidence. First, the ALJ took Plaintiff's limited mobility into account by finding that Plaintiff could only walk or stand for four hours per day. (*Id.* at PageID.46.)

Moreover, while Plaintiff did report pain in his lower back, he had neither "participated in physical therapy" nor "received injections since 2016." (*Id.* at PageID.47.) Despite having pain that purportedly "eroded" his ability to walk and stand, on two separate examinations, Plaintiff walked with "a normal gait and stance" and displayed "normal motor strength" and sensation. (*Id.* at PageID.48.) Plaintiff "did not walk with a limp nor did he use an assistive device for ambulation." (*Id.*) Plaintiff asserts that he could only "persist in any activity for a short time" before he must sit to recover from pain, but there is no objective evidence in the record to support this assertion. (ECF No. 10, at PageID.836.)

With respect to Plaintiff's ability to use his left arm, the ALJ accounted for Plaintiff's limitations by finding that Plaintiff could "occasionally perform overhead reaching [with his] non-dominant left [arm] and . . . handle items frequently with [his] left hand." (ECF No. 8, at PageID.46.) Yet, while Plaintiff asserts that his ability to use his left arm has been "substantially eroded" by his initial injury in 2001, he continued to work for several years after the injury. (*Id.* at PageID.502.) For these reasons, I recommend finding that the ALJ's RFC finding was supported by substantial evidence.

### H. Conclusion

For the previously discussed reasons, I suggest that substantial evidence supports the Commissioner's denial of benefits, and I recommend **DENYING** Plaintiff's motion, (ECF No. 10), **GRANTING** Defendant's motion, (ECF No. 13), and affirming the decision.

### III.  REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days

after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 31, 2021                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge